# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE – DIVISION Z

IMPERIAL POINT COLONNADES
CONDOMINIUM ASSOCIATION,

      Plaintiff,

vs.

COLONY INSURANCE COMPANY,
EVANSTON INSURANCE COMPANY, &
LIBERTY SURPLUS INSURANCE
CORPORATION,

      Defendants.

Civil Action No.: 0:20-cv-62386-RKA

---

## DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

---

**Zelle LLP**
Christine M. Renella, Esq.
crenella@zelle.com
SunTrust International Center
One Southeast Third Avenue, Ste. 1600
Miami, FL 33131-4332
Telephone: (786) 693-2350
Facsimile: (612) 336-9100
*Attorneys for Liberty Surplus Insurance Corporation*

**Goodman McGuffey LLP**
Robert M. Darroch, Esq.
rdarroch@gm-llp.com
6751 Professional Parkway West, Suite 103
Sarasota, Florida 34240-8449
Tel:    941-953-4411
Fax:    941-953-4410
*Attorneys for Defendant Colony Insurance Company*

**Finazzo Cossolini O'Leary Meola & Hager, LLC**
Jeremiah L. O'Leary, Esq.*
jeremiah.oleary@finazzolaw.com
Robert M. Wolf, Esq.*
robert.wolf@finazzolaw.com
Piel A. Lora, Esq.*
piel.lora@finazzolaw.com
67 East Park Place, Suite 901
Morristown, NJ 07960
Telephone: (973) 343-4960
Facsimile: (973) 343-4970
*Admitted *Pro Hac Vice*
*Attorneys for Liberty Surplus Insurance Corporation*

**Clausen Miller P.C.**
Douglas M. Cohen, Esq.
dcohen@clausen.com
4830 West Kennedy Blvd., Suite 600
Tampa, Florida 33609
Tel: 312-646-7782
*Attorneys for Defendant Evanston Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................. 4

    A.    Plaintiff ................................................................................ 4

    B.    Defendants and the Policy .................................................... 4

    C.    Hurricane Irma ................................................................... 6

    D.    Investigation of the Claimed Loss ......................................... 7

ARGUMENT ..................................................................................... 12

    POINT I:    INSURERS ARE ENTITLED TO SUMMARY JUDGMENT
                AS A MATTER OF LAW. ............................................. 12

    POINT II:    PLAINTIFF MAY NOT RECOVER UNDER THE POLICY
                BECAUSE IPC BREACHED THE POLICY'S NOTICE
                REQUIREMENT. ......................................................... 14

                A.    Plaintiff's Notice Was Late as a Matter of Law. ........ 14

                B.    Plaintiff Cannot Meet Its Burden of Demonstrating That
                      Defendants Were Not Prejudiced by Late Notice. ......... 18

                C.    The Subject Policy Required More Than the "Prompt"
                      Notice and Notice "As Soon as Practicable" Addressed
                      in the Controlling Case Law. ..................................... 21

    POINT III:    SEVERAL POLICY EXCLUSIONS PRECLUDE
                PLAINTIFF'S CLAIMS FOR COVERAGE AND WARRANT
                THE DISMISSAL OF THE AMENDED COMPLAINT. ........ 22

                A.    The Policy Does Not Cover Wear and Tear or Gradual
                      Deterioration. ......................................................... 22

                  B.    The Cost of Making Good Defective Design, Faulty
                      Material or Faulty Workmanship is Excluded from
                      Coverage Under the Policy ......................................... 23

CONCLUSION ................................................................................. 24

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*1130 W. Atl. Ave. LLC v. Scottsdale Ins. Co.*,
   2021 U.S. Dist. LEXIS 193090 (S.D. Fla. Oct. 7, 2021) ........................................................16

*Am. Fire & Cas. Co. v. Collura*,
   163 So. 2d 784 (Fla. 2d DCA 1964) ......................................................................................22

*Aseff v. Caitlin Specialty Ins. Co., Inc.*,
   115 F. Supp. 3d 1364 (S.D. Fla. 2015) ..................................................................................19

*Bankers Ins. Co. v. Macias*,
   475 So. 2d 1216 (Fla. 1985) ............................................................................................14, 19

*Bastian v. United Servs. Auto. Ass'n*,
   150 F. Supp. 3d 1284 (M.D. Fla. 2015) ................................................................................13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .....................................................................................................12, 13

*Church of the Palms-Presbyterian (U.S.A.), Inc. v. The Cincinnati Insurance Co.*,
   404 F. Supp. 2d 1339 (M.D. Fla. 2005) ................................................................................24

*Class Action of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   2013 WL 9759740 (S.D. Fla. May 30, 2013) ........................................................................23

*Clena Invs. Inc. v. XL Specialty Ins. Co.*,
   2012 WL 1004851 (S.D. Fla. Mar. 26, 2012) ..................................................................15, 19

*Deese v. Hartford Acc. & Indem. Co.*,
   205 So. 2d 328 (Fla. 1st DCA 1967) .....................................................................................16

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ..............................................................13

*Evers v. General Motors Corp.*,
   770 F.2d 984 (11th Cir. 1985) ..............................................................................................13

*Ferox, LLC v. ConSeal Int'l, Inc.*,
   175 F. Supp. 3d 1363 (S.D. Fla. 2016) ..................................................................................13

*Gemini II Ltd. v. Mesa Underwriters Spec. Ins. Co.*,
   592 Fed. App'x 803 (11th Cir. 2014) ....................................................................................14

*Horowitch v. Diamond Aircraft Indus., Inc.*,
   645 F.3d 1254 (11th Cir. 2011) ............................................................13

*Ideal Mut. Ins. Co. v. Waldrep*,
   400 So. 2d 782 (Fla. 3d DCA 1981) .......................................15, 16, 22

*Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*,
   2012 WL 266438 (S.D. Fla. Jan. 30, 2012) ....................................15, 18

*Kroener v. Fla. Ins. Guar. Ass'n*,
   63 So. 3d 914 (Fla. 4th DCA 2011) ......................................................15

*Laster v. U.S. Fid. & Guar.*,
   293 So. 2d 83 (Fla. 3d DCA 1974) .......................................................14

*LMP Holdings, Inc. v. Scottsdale Ins. Co.*,
   2021 WL 4900622 (S.D. Fla. Sept. 27, 2021) ............................... *passim*

*LoBello v. State Farm Fla. Ins. Co.*,
   152 So. 3d 595 (Fla. 2d DCA 2014) .....................................................14

*Miele v. Certain Underwriters at Lloyd's of London*,
   559 Fed. App'x 858 (11th Cir. 2014) ...................................................23

*Mid-Content Cas. Co. v. Basdeo*,
   742 F. Supp. 2d 1293 (S.D. Fla. 2010) ..........................................15, 18

*ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*,
   881 F.3d 1293 (11th Cir. 2018) ............................................................13

*Morton v. Indem. Ins. Co. of N. America*,
   137 So. 2d 618 (Fla. 2d DCA 1962),
   *overruled on other grounds by Am. Fire & Cas. Co. v. Collura*,
   163 So. 2d 784 (Fla. Dist. Ct. App. 1964) ...........................................15

*Paulucci v. Liberty Mut. Fire Ins. Co.*,
   190 F. Supp. 2d 1312 (M.D. Fla. 2002)................................................23

*PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*,
   599 Fed. App'x 845 (11th Cir. 2014) .............................................15, 16

*Ramirez v. Scottsdale Ins. Co.*,
   2021 WL 5050184 (S.D. Fla. Oct. 29, 2021).........................................16

*Rectory Park, L.C. v. City of Delray Beach*,
   208 F. Supp. 2d 1320 (S.D. Fla. 2002) .................................................13

*Ro-Ma Holdings #4, LLC v. Scottsdale Ins. Co.*,
    2021 U.S. Dist. LEXIS 75890 (S.D. Fla. Apr. 19, 2021) ........................................................16

*S.-Owners Ins. Co. v. Wentworth Constr. Co., LLC*,
    2019 WL 8275154 (S.D. Fla. Dec. 10, 2019) .........................................................................13

*Saregama India Ltd. v. Mosley*,
    635 F.3d 1284 (11th Cir. 2011) .............................................................................................13

*Stark v. State Farm Fla. Ins. Co.*,
    95 So. 3d 285 (Fla. 4th DCA 2012) .......................................................................................14

*Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*,
    845 So. 2d 161 (Fla. 2003) ....................................................................................................24

*Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*,
    674 F. Supp. 2d 1333 (S.D. Fla. 2009) .................................................................................22

*Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*,
    599 Fed. App'x 875 (11th Cir. 2015) ............................................................................ *passim*

## **RULES**

Fed. R. Civ. P. 56(a) ............................................................................................................1, 12

S.D. Fla. L. Civ. R. 7.1(a) .........................................................................................................1

Defendants, Liberty Surplus Insurance Corporation ("Liberty"), Colony Insurance Company ("Colony"), and Evanston Insurance Company ("Evanston") (collectively referred to herein as "defendants" or "defendant insurers"), pursuant to Federal Rule of Civil Procedure 56(a) and Southern District of Florida Local Rule 7.1(a), move for entry of an order granting summary judgment in their favor and against Plaintiff, Imperial Point Colonnades Association ("Plaintiff" of "IPC"). The grounds for this motion are contained in the following memorandum of law.

## PRELIMINARY STATEMENT

In this action, IPC breached its insurance policy when it waited nearly 2 or more years to notify its insurers of its alleged loss and claim. As a matter of law, this was not prompt notice under the policy, and created a presumption of prejudice to defendants which, by any objective measure, IPC cannot possibly overcome. Accordingly, the insurers are entitled to summary judgment on IPC's breach of contract claim.

This is a first-party property insurance coverage action in which Plaintiff alleges that multiple roofs on the residential buildings at its Fort Lauderdale condominium complex sustained damage on September 10, 2017 during Hurricane Irma ("Irma"). As detailed below, despite the more than two-year delay in presenting its claim, IPC now claims –incredibly—that as a result of Irma, 16 of 23 roofs need to be completely replaced at an estimated cost of $7,647,219.27 and that the defendant insurers breached their insurance contract with IPC by not providing coverage for this cost.

Long before reporting its claim to the defendant insurers, however, IPC paid two roofing contractors, Best Roofing and Roof Doctors, $88,331.01 to repair leaking roofs over a period of 20 months after Hurricane Irma ("Irma"), which occurred on September 10, 2017. The repairs are documented in the more than 50 invoices that Plaintiff belatedly presented to the insurers as

support for costs allegedly incurred to "mitigate" alleged Irma roof damage.  Despite this undisputed and incontrovertible fact, Plaintiff did not provide its property insurers with notice of what it now claims is Irma damage until *after* repairing the roofs and destroying the only evidence that might have allowed the insurers to determine the cause of the damage now being claimed. Specifically, Plaintiff did not provide notice of its claimed loss to Liberty until July 1, 2019, nearly two years after Irma and after the $88,331.01 in roof repairs had been completed.[1]

By the time the insurers were given notice, 22 to 26 months had elapsed since the September 10, 2017 storm and evidence of the claimed Hurricane Irma damage to IPC's roofs was lost, or irrevocably altered as a result of the roof repairs, or otherwise subjected to further aging and deterioration through seven seasons of weather cycles.

Each of the insurers who is named as a defendant in this action issued policies of insurance through which they subscribed to Policy No. CA3P005211161-Q1600045-00 issued to IPC for the period October 1, 2016 to October 1, 2017 (the "Policy"). The Policy contained a "Notice of Loss" provision which required: "The Insured shall report to the Insurer any loss or damage which may become a claim under this insurance policy as soon as may be practicable after it becomes known to the Insured." (emphasis added). The Policy also contained a "Duties of the Named Insured in the Event of Loss or Damage" condition, which included the following:

> It is a condition precedent to any payment of loss that the Named Insured must see that the following are done in the event of loss or damage to insured property as soon as possible:
>
> \*   \*   \*
>
> B.      Give the Company immediate notice of loss or damage including a description of the property involved.
>
> \*   \*   \*

---

[1] Notably, Colony and Evanston were *never* notified of the loss by Plaintiff or the Plaintiff's Public Adjuster.  Instead, Colony and Evanston were notified by the Independent Adjuster at Engle Martin in an email dated November 15, 2019, more than 26 months after Hurricane Irma.

F. Permit the Company to inspect the property and records proving the loss or damage….

As a consequence of these policy requirements, IPC's late reporting to the insurers of "any loss or damage which may become a claim" and IPC's failure to give the insurers "immediate notice of loss or damage to insured property" irreparably prejudiced defendants' investigation of the claim and vitiates any coverage that might otherwise have been available for roof damage allegedly caused by Hurricane Irma.  Under these provisions and Florida law, Plaintiff's claim is barred as a matter of law because it did not provide any notice of its claim until 22 to 26 months after Irma struck – a breach of the policy's notice requirement.

Various policy exclusions also preclude Plaintiff's claims.  For example, the Policy does not insure "wear and tear, or gradual deterioration, unless physical loss or damage not excluded in this policy ensues, and then this policy shall only insure the ensuing loss or damage."  In addition, the Policy does not insure the "cost of making good defective design, faulty material, or faulty workmanship, except, if physical loss or damage not excluded in this policy ensues, then this policy shall insure such ensuing loss or damage."  IPC's roof damage claim involves aging roofs, some 17-18 years old at the time of the storm, which were suffering from long-term deterioration, wear and tear and faulty repairs and workmanship. There was no separate ensuing physical loss or damage not excluded in the Policy that resulted from these conditions. Consequently, Plaintiff's claim also fails by reason of multiple Policy exclusions.

In short, IPC's failure to provide timely notice of its alleged loss and claim creates a presumption of prejudice to defendants which IPC cannot overcome. As a result, IPC's claims against the insurers are barred.    In addition, various exclusions contained in the Policy bar coverage.  This Court should therefore grant defendants' motion for summary judgment and enter

final judgment in the Defendants' favor.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Plaintiff

Plaintiff alleges that it is a condominium association representing the owners of multi-unit condominium buildings with a mailing address of 2156 NE 67th Street, Fort Lauderdale (the "Property"). *See* accompanying Declaration of Jeremiah L. O'Leary dated November 19, 2021 ("O'Leary Dec."), Ex. 1 (Amended Complaint at ¶ 2).

### B. Defendants and the Policy

Quantum Risk & Insurance Brokers, LLC ("Quantum Brokers"), for the Quantum Real Estate Owners Association, LLC Real Estate Program (the "Quantum Program"), issued a policy of first-party property insurance to Plaintiff effective October 1, 2016 to October 1, 2017, bearing Policy No. CA3P005211161-Q1600045-00 (the "Policy"). O'Leary Dec., Ex. 2 (the Policy). Liberty's participation in the Quantum Program, and in particular its 33.33% ($5,000,000) participation in the $15,000,000 excess of $10,000,000 layer, which includes named windstorm (per Liberty Policy No. 1000207273-01), is reflected on page 4 of 5 of the Excess Property Form of the Policy. O'Leary Dec., Ex. 2 (Policy at LSIC 000159).[2]

The Policy contains "GENERAL PROVISIONS", which include the following initiating paragraph:

> Subject to the terms, conditions, limitations and exclusions hereinafter contained or added by endorsement(s), this Policy insures **Real Property** and **Personal Property** (including Improvements and Betterments) of the Named Insured, or property for which the Named Insured may be held legally liable, against All Risks of Direct Physical Loss or Damage Excluding **Flood** or **Earth Movement**, or as

---

[2] The other participants in this excess layer are Defendants Colony Insurance Company ("Colony") participating at 50% of $15,000,000 excess over $10,000,000 ($7,500,000) (Policy No. XP263322), and Evanston Insurance Company ("Evanston") participating at 16.67 % of $15,000,000 excess over $10,000,000 ($2,500,000) (Policy No. MKLV11XP004409). The primary named storm layer, in which only Liberty and Everest Insurance Company participated, was exhausted with the payment of claims to other insureds in the Quantum Program.

listed in the Declaration Page or Endorsements attached hereto, occurring during the policy period.

O'Leary Dec., Ex. 2 (Policy at LSIC 000004).

The Policy also contains exclusions, notice provisions and conditions. The exclusions pertinent to the instant motion include the following:

**6.**    **Loss or Damage Excluded**

This policy does not insure the following:

\*    \*    \*

J.     Wear and tear, or gradual deterioration, unless physical loss or damage not excluded in this policy ensues, and then this policy shall insure only the ensuing loss or damage.

K.     The cost of making good defective design, faulty material, or faulty workmanship, except, if physical loss or damage not excluded in this policy ensues, then this policy shall insure such ensuing loss or damage.

O'Leary Dec., Ex. 2 (Policy at LSIC 000005 – LSIC 000006). The notice provisions and conditions include the following:

**16.**    **Notice of Loss**

The Insured shall report to the Insurer any loss or damage which may become a claim under this insurance policy as soon as may be practicable after it becomes known to the Insured.

\*    \*    \*

**45.**    **Duties of the Named Insured in the Event of Loss or Damage**

It is a condition precedent to any payment of loss that the Named Insured must see that the following are done in the event of loss or damage to insured property as soon as possible:

\*    \*    \*

B.     Give the Company immediate notice of loss or damage including a description of the property involved.

*   *   *

F.     Permit the Company to inspect the property and records proving the loss or damage….

O'Leary Dec., Ex. 2 (Policy at LSIC 000017 & LSIC 000025).

The Policy further includes a Named Storm Coverage Extension Endorsement.  O'Leary Dec., Ex. 2 (Policy at LSIC 000041- LSIC 000043).  Subject to all other terms and conditions, the Named Storm Coverage Extension Endorsement adds coverage for "All Risks of Direct Physical Loss or Damage from **Named Storm** as listed in the Declaration Page attached hereto, occurring during the policy period as defined in the Declaration Page", and provides that "[w]hen a **Hurricane** results in loss or damage, each and every loss will be subject to the following Deductible(s)", including, for loss or damage to real and personal property, a Hurricane Calendar Year Deductible of $51,268 for each of IPC's 23 residential location buildings listed on the table contained within the Endorsement.  *Id.*

**C.  Hurricane Irma**

Plaintiff alleges that, on September 10, 2017, the Property sustained damage due to Hurricane Irma.  O'Leary Dec., Ex. 1 at ¶ 5. Plaintiff further alleges that "[a]fter discovering the damage at issue, Plaintiff timely notified [Quantum Brokers] of the loss." *Id*. at ¶ 6.  However, Plaintiff did not report the claimed loss to any of the Defendants until July 1, 2019 almost 22 months after Irma occurred, in an email from its public adjuster, Phillip Wright ("Wright") of The Guardian Group, enclosing a Letter of Representation and W-9 form. O'Leary Dec., Ex. 3 (July 1, 2019 email).  In fact, Plaintiff did not submit an actual claim for alleged Irma damages until January 21, 2020, more than 28 months after the storm, when Wright emailed a roof replacement estimate to Rick Wiggins ("Wiggins") of Engle Martin & Associates ("Engle Martin").  O'Leary Dec., Ex. 4 (Wright 1/21/2020 email to Wiggins with PA 1/21/2020 Estimate, LSIC 001223 –

6

LSIC 001260).

### D. Investigation of the Claimed Loss

Engle Martin is identified in the Policy as the "appointed third party claims administrator and loss adjuster." O'Leary Dec., Ex. 2 (Policy at LSIC 000020). As the adjuster at Engle Martin assigned to handle the loss investigation, Wiggins undertook an initial inspection of the 12 roofs (on Building Nos. 1-7, 11-12, 15, 18 and 23) with Wright on July 22, 2019. O'Leary Dec., Ex. 5 (Engle Martin Report No. 1 dated 8/9/2019, EM 002279 - EM 002285). Wiggins reported that "we did not observe any visible evidence of wind damage or other openings as the result of a covered cause of loss to the exterior building envelopes, doors or windows during our inspection." *Id.* at EM 02283. He noted roof tiles that were "shifted and out of alignment along the roof slopes", "chipped" tiles that were "predominantly on the right corner of the involved tiles", "cracked roofing tiles … scattered along the roof slopes", "evidence of past repairs" and "ridge tiles [that were] loose and could be lifted by hand." *Id.* He recommended the retention of a structural engineer to "evaluate all roofs and opine on the exact cause and duration of the claimed roof damages." *Id.* at EM 002281.

On August 29, 2019, Engle Martin issued a Reservation of Rights and Request for Information letter to Wright ("ROR and RFI Letter"), in which it noted Plaintiff's 22-month delay in reporting the loss, requested information (including information as to whether and, if so, what interior damage was being claimed), and stated that it would be conducting its investigation subject to a full reservation of the insurers' rights. O'Leary Dec., Ex. 6 (ROR and RFI Letter, LSIC 000469 – LSIC 000476). The ROR and RFI Letter quoted from the "Duties of the Named Insured in the Event of Loss or Damage" provision of the Policy, including the requirement that, as a condition precedent to any payment of loss and as soon as possible, Plaintiff "[g]ive the Company

immediate notice of loss or damage including a description of the property involved". *Id.*

Robert L. Wilson, Jr., P.E. ("Wilson") of the ProNet Group, Inc. ("ProNet") conducted an engineering inspection of the roofs of Plaintiff's buildings on September 16 and 17, 2019, over two years after the loss, and issued a report dated October 25, 2019.  O'Leary Dec., Ex. 7 (ProNet Report).  The ProNet Report identified evidence of previous roof repairs, including multiple areas of "mismatched tiles", and found "loose and debonded, but not displaced, hip and ridge tiles" on 11 building roofs, a condition which Wilson concluded was the result of "humidity and temperature related expansion and contraction of the tiles and mortar or adhesive over the years of service in combination with the quality of the original installation" and "was not the result of the passage of Hurricane Irma."   O'Leary Dec., Ex. 7 (ProNet Report at p. 6, ¶ 3 & pp. 8-18).[3]  The report also identified "broken/cracked roof tiles" that Wilson opined was "not associated with Irma" but rather "resulted from the quality of material and workmanship at the time of original installation, normal wear and tear, foot traffic during past maintenance and repairs, temperature and moisture related expansion and contraction, and exposure to the elements over the years." *Id.* at p. 6, ¶ 4.   Further, the report referred to "chipped roof tiles on the buildings" which Wilson concluded "resulted from temperature related expansion and contraction and foot traffic" but not from Irma. *Id.*

ProNet noted a total of 35 displaced tiles on nine roofs, which Wilson stated without any expressed rationale were "a result of winds associated with Hurricane Irma", and six missing tiles on four roofs, which Wilson stated without explanation were "consistent with wind damage from Hurricane Irma." *Id.* at p.7, ¶ 1.  The ProNet Report concluded that the minimal roof tile damage that it associated with the storm "can be repaired and [the roofs] do not have to be replaced" under

---

[3] According to a spreadsheet prepared by public adjuster Wright, three of the 12 roofs in the claim were 17-18 years old and five were 15-16 years old at the time of Hurricane Irma.  O'Leary Dec., Ex. 8 (WRIGHT 001278).

the Florida Building Code.  *Id.* at p. 7, ¶ 2.

When Engle Martin received the ProNet Report, the claim investigation was incomplete and ongoing.  Plaintiff still had not provided requested documents and information, including the following: (1) a detailed building estimate for repair/replacement of the involved roofs to enable the insurers to determine the exact scope and cost of what was being claimed; (2) confirmation of any interior damages being claimed; (3) invoices, estimates, receipts and/or proposals for repair of the building roofs or interiors; and (4) minutes of condominium association Board meetings going back seven years.  O'Leary Dec., Ex. 9 (Engle Martin Report No. 4 dated 11/15/2019).

Although its investigation on behalf of the insurers was still open, Engle Martin prepared what it termed a "***preliminary*** detailed building estimate" outlining the cost to repair the limited wind-related damage identified in the ProNet Report.  O'Leary Dec., Ex. 10 (Engle Martin Preliminary Estimate).  The Engle Martin Preliminary Estimate calculated that the cost of repairing potential Irma-related damage on the 12 buildings within the claim was significantly below the Policy's Hurricane Calendar Year Deductible for each building.  *Id.*

On January 21, 2020, nearly seven months after he first forwarded his Letter of Representation to Quantum Brokers and almost 28 months after the loss, Wright first provided Engle Martin with an estimate in the amount of $6,032,820.38 to fully replace the 12 roofs he had identified as within the claim, which far exceeded the Engle Martin Preliminary Estimate.  O'Leary Dec., Ex. 4. Included within the PA Estimate was the $88,331.01 in costs allegedly incurred between September 14, 2017 and May 13, 2019 to repair Irma-related roof damage.  *Id.* at LSIC 001228 & O'Leary Dec., Ex. 11 (Table Listing Best Roofing & Roof Doctors Invoices totaling $88,331.01, WRIGHT 001443 – WRIGHT 0001444).  Wright also provided Engle Martin with large "zip" files on January 21, 2020 containing Board minutes as well as roof repair documents;

on January 28, 2020, the public adjuster produced additional roof repair materials, including work orders associated with a new roofer, Swenson Roofing.  O'Leary Dec., Ex. 12 (Wright-Wiggins emails 1/3/2020-2/21/2020, WRIGHT 000360 – WRIGHT 000370).  Wiggins initially responded that he was reviewing the documents provided so he could report to the insurers and later responded on February 20, 2020 that the IPC Board minutes "do not appear to be complete" and that he still needed additional documentation from Plaintiff concerning "interior repairs of the buildings and common areas being claimed as a result of this loss."  *Id.* at WRIGHT 000364 – WRIGHT 000366.

While Engle Martin awaited this outstanding information, the insurers retained a second consulting firm, J.S. Held, to conduct a comprehensive inspection with forensic engineering and building consulting teams of IPC's buildings, including the roofs, the exterior building envelopes and the building interiors.  O'Leary Dec., Ex. 13 (Engle Martin Report No. 7 dated 3/12/2020, EM 001904 – EM 001938).  Engle Martin advised Wright of this retention on or about February 27, 2020 (*id.*, at EM 001915) and arranged, through Wright, for J.S. Held to conduct its inspection of the exteriors and interiors of the buildings during the week of March 23, 2020.  *Id.* at EM 001908, EM 001913 – EM 001914.  However, because Wright did not provide the information requested concerning the location of any alleged interior damages being claimed, together with repair documentation, and thereafter advised Engle Martin by an email dated March 20, 2020 and in a subsequent letter dated April 2, 2020 that IPC would not be making a claim for interior damages,[4] only the building exteriors were inspected during the week of March 23, 2020.  O'Leary Dec., Ex. 14 (IPC 4/2/2020 Letter to Wright, IPCCA 002126).

---

[4] Subsequently, IPC changed its position and, in an undated signed note provided to Engle Martin in late May 2020, stated that it would be claiming "drywall repairs… from May 18, 2020 and beyond".  O'Leary Dec., Ex. 15 (IPC late May 2020 Letter, IPCCA 002267).  Later, in the context of this litigation, J.S. Held conducted an interior inspection and issued a report.

J.S. Held sent two teams of forensic engineering and building consultants to inspect Plaintiff's roofs on March 23-24, 2020 and ultimately issued a comprehensive report of its findings dated May 28, 2020, which was signed by Andrew Lovenstein, P.E., S.I. ("Lovenstein").  O'Leary Dec., Ex. 16 (Held Roof Report, EM 000178 – EM 000317).  Lovenstein concluded in the Held Roof Report that the IPC roofs were suffering from long-term deterioration, wear and tear and faulty workmanship, materials and maintenance, as well as pre-existing damage, but did not exhibit any evidence – to the extent such evidence would still be available to the inspection teams approximately 30 months after the event -- of windstorm damage associated with Hurricane Irma. *Id.*, at EM 000178 – EM 000179 (Executive Summary) and *passim*.  Lovenstein further opined that the conditions his team observed on the roofs, from whatever cause, could be repaired with reclaimed tiles of the same profile and manufacture and that the roofs would not need to be replaced under the Florida Building Code.  *Id.* at EM 000178 & EM 000188 – EM 000190.[5]

In a letter dated July 23, 2020, Engle Martin reiterated the interested insurers' reservation of rights, as first expressed in the ROR and RFI Letter dated August 29, 2019, and further advised Plaintiff of the findings contained within the Held Report, which it provided with the letter. O'Leary Dec., Ex. 18 (July 23, 2020 ROR Letter, without enclosure, EM 008282 – EM 008286). However, because Plaintiff had first stated that interior damages were not being claimed and then amended its claim to add interior damages associated with "recent heavy rains", and because Wright provided additional documentation of that "recent damage" and repairs that needed to be reviewed, Engle Martin advised Plaintiff that "there remains a question as to whether there is coverage for the reported loss" and that it would investigate under a reservation of rights "the open questions that remain with regard to the newly submitted interior damages claim."  *Id.*

---

[5] Lovenstein's later interior inspection, which is documented in a J.S. Held report dated July 16, 2021, confirmed and bolstered these findings.  O'Leary Dec., Ex. 17 (Held Interior Report).

On October 16, 2020, upon completion of its investigation, Engle Martin issued a letter to IPC on behalf of the insurers denying coverage for the claimed roof damage. O'Leary Dec., Ex. 19 (Partial Denial Letter, without enclosure, EM 008596 – EM 008602).  Again citing to the Held Report and other information obtained during the investigation, the Partial Denial Letter explained that "there is no evidence of any wind damage or any other Covered Cause of Loss to the roof[s] either from Irma or other intervening wind event that may have occurred during the approximately 22 month period between Hurricane Irma and the submission of this claim." *Id.* at EM 008601. The letter cited to various exclusions and to the Policy's notice condition, stating that "the delayed reporting of this loss by approximately 1 years and 10 months after the claimed date of loss of September 10, 2017 combined with ongoing repairs to the roof[s] prior to submission of this claim on July 1, 2019 may have prejudiced [the insurers'] investigation of this loss, including the newly submitted interior water damage claim." *Id.*  While the letter reserved insurers' rights with regard to the interior claim, and invited Plaintiff to provide additional facts that could warrant further consideration of the claim, Plaintiff's only response was the instant litigation.

## ARGUMENT

### POINT I

**INSURERS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.**

Under Rule 56 of the Federal Rules of Civil Procedure a "court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "bears the initial responsibility of

informing the district court of the basis for the motion" and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has established the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and by his own "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party must rely on more than conclusory statements of allegations unsupported by facts. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Additionally, when a request for summary judgment turns on a pure question of law, such as the interpretation of an unambiguous contract provision, "no relevant factual disputes" can prevent a court from entering summary judgment. *S.-Owners Ins. Co. v. Wentworth Constr. Co., LLC,* 2019 WL 8275154, at *5 (S.D. Fla. Dec. 10, 2019). "Contract and statutory interpretation are both questions of law appropriately decided on summary judgment." *Ferox, LLC v. ConSeal Int'l, Inc.,* 175 F. Supp. 3d 1363 (S.D. Fla. 2016) (citing *Bastian v. United Servs. Auto. Ass'n,* 150 F. Supp. 3d 1284, 1288 (M.D. Fla. 2015) (citing *Saregama India Ltd. v. Mosley,* 635 F.3d 1284, 1290 (11th Cir. 2011); *Rectory Park, L.C. v. City of Delray Beach,* 208 F. Supp. 2d 1320, 1329 (S.D. Fla. 2002).

The sole questions presented by this motion are questions of Florida law related to Plaintiff's notice of a claim for alleged Hurricane Irma damage 22 to 26 months after the storm and the interpretation of the Policy's notice and other provisions.[6]  There are no genuine disputes of material fact, and thus the matter can appropriately be decided on summary judgment.

---

[6] As a federal court sitting in diversity, the Court is to apply the substantive law of the forum state where the incident arose, in this case the law of Florida, and federal procedural law.  *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.* 881 F.3d 1293, 1299 (11th Cir. 2018); *Horowitch v. Diamond Aircraft Indus., Inc.,* 645 F.3d 1254, 1257 (11th Cir. 2011); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

## POINT II

**PLAINTIFF MAY NOT RECOVER UNDER THE POLICY BECAUSE IPC BREACHED THE POLICY'S NOTICE REQUIREMENT.**

Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595 (Fla. 2d DCA 2014). The first step is to determine whether the insured provided timely notice. *Id*. Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985). The burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts." *Id*. at 1218; *see also Stark v. State Farm Fla. Ins. Co.*, 95 So. 3d 285, 288 (Fla. 4th DCA 2012).  Applying these standards, the insurers are entitled to judgment in this case as a matter of law.

### A.  Plaintiff's Notice Was Late as a Matter of Law.

It is undisputed that Plaintiff did not report its alleged Hurricane Irma loss until July 1, 2019 for Liberty and November 15, 2019 (*see* O'Leary Dec., Ex. 20, Engle Martin 11/15/2019 Email, EM 001024) for Colony and Evanston, 22 to 26 months after the September 10, 2017 storm. That 22 to 26 month delay is late as a matter of Florida law and final summary judgment in favor of the defendants is proper.

"The purpose of a notice provision in an insurance policy is to allow the insurer to 'evaluate its rights and liabilities, [and] to afford it an opportunity to make a timely investigation.'"  *LMP Holdings, Inc. v. Scottsdale Ins. Co.*, 2021 WL 4900622, at *2 (S.D. Fla. Sept. 27, 2021), citing *Gemini II Ltd. v. Mesa Underwriters Spec. Ins. Co.,* 592 Fed. App'x 803, 806 (11th Cir. 2014) (quoting *Laster v. U.S. Fid. & Guar.,* 293 So. 2d 83, 86 (Fla. 3d DCA 1974)). "Under Florida law, a failure to provide timely notice of loss in contravention of a policy provision is a legal basis for

the denial of recovery under the policy." *Id.*, citing *Mid-Content Cas. Co. v. Basdeo,* 742 F. Supp. 2d 1293, 1335 (S.D. Fla. 2010); *Ideal Mut. Ins. Co. v. Waldrep,* 400 So. 2d 782, 785 (Fla. 3d DCA 1981).

"[W]hen the undisputed factual record establishes notice is so late that no reasonable juror could find it timely, Florida courts will deem the notice untimely as a matter of law." *LMP Holdings,* 2021 WL 4900622, at *2, citing *Clena Invs. Inc. v. XL Specialty Ins. Co.*, 2012 WL 1004851, at *4 (S.D. Fla. Mar. 26, 2012); *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.,* 566 Fed. App'x 845, 848 (11th Cir. 2014) ("Florida courts have ruled *on summary judgment* that an insured's delayed notice to an insurer did not constitute prompt notice under the policy when the factual record did not support an argument that the delay was reasonable." (emphasis in original)); *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, 2012 WL 266438, at *2 (S.D. Fla. Jan. 30, 2012); *Kroener v. Fla. Ins. Guar. Ass'n,* 63 So. 3d 914, 916 (Fla. 4th DCA 2011). Where the policy "does not define the contours of 'prompt' notice, it shall be construed to mean that notice should be given 'with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 Fed. App'x 875, 879 (11th Cir. 2015). "'[W]hen facts are undisputed and different inferences cannot reasonably be drawn therefrom,' the question of whether notice is prompt is a question for the court." *LMP Holdings, supra,* quoting from *Yacht Club, supra,* 599 Fed. App'x at 879.

Florida courts have long held that notice after periods of even six months or less is not timely notice as a matter of law. *See*, *e.g.*, *Morton v. Indem. Ins. Co. of N. America,* 137 So. 2d 618, 620 (Fla. 2d DCA 1962) (6-1/2-month delay), *overruled on other grounds by Am. Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 793-94 (Fla. Dist. Ct. App. 1964); *Ideal Mut. Ins. Co. v.*

*Waldrep, supra,* 400 So. 2d at 785 (two-month delay); *Deese v. Hartford Acc. & Indem. Co.,* 205 So. 2d 328, 329 (Fla. 1st DCA 1967) (four-week delay); *see also PDQ Coolidge Formad, supra,* 566 Fed. App'x at 849 (six-month delay late as a matter of law).

In addition to *LMP Holdings, supra,* 2021 WL 4900622, which held that a 27-month delay in reporting a Hurricane Irma loss was too late as a matter of law, district judges in this district in three other recent Irma cases have granted summary judgment to the insurers when first notice was submitted 14, 20 and 26 months after the storm. *Ro-Ma Holdings #4, LLC v. Scottsdale Ins. Co.,* 2021 U.S. Dist. LEXIS 75860, at *7 (S.D. Fla. Apr. 19, 2021) (14-month delay in providing notice "so late that no reasonable jury could find it timely"); *Ramirez v. Scottsdale Ins. Co.,* 2021 WL 5050184, at *5 (S.D. Fla. Oct. 29, 2021) (20-month delay in notice "so late notice that 'no reasonable jury could find it timely'"); *1130 W. Atl. Ave. LLC v. Scottsdale Ins. Co.,* 2021 U.S. Dist. LEXIS 193090, at *7 (S.D. Fla. Oct. 7, 2021) (26-month notice of Irma claim not "prompt" as a matter of law).

The facts of *LMP Holdings* are closely analogous to the present matter. LMP Holdings was aware of damage to its property on multiple instances throughout the 27 months before it reported the claim, but still failed to report it to its property insurer. The plaintiff knew of puncture holes in the roof and water damage after the storm, but rather than reporting the damage to its insurer, decided to patch it up. Even as more 'issues' began surfacing in 2018, LMP Holdings still failed to report the roof damage. The court concluded that notice was late as a matter of law regardless of whether the insured believed that the damages would not exceed the deductible because "'[p]rompt notice is not excused because an insured might not be aware of the full extent of damage or that the damage would exceed the deductible.' The undisputed facts in this case are sufficient to 'lead a reasonable and prudent man to believe that a claim for damages would arise.'"

16

*LMP Holdings, supra,* 2021 WL 4900622, at 3, citing *Yacht Club, supra*, 599 Fed. App'x at 879.

Here, IPC claims that it spent $88,331.01 on roof leak repairs during the 20-month period between September 14, 2017 (four days after Irma) and May 13, 2019 (six weeks before Plaintiff first provided the public adjuster's Letter of Representation and W-9). After providing notice of its loss on July 1, 2019, Plaintiff presented the roof leak repair charges to the insurers as Irma-related, first including them on a spreadsheet (O'Leary Dec., Ex. 10), then providing the invoices themselves (O'Leary Dec., Ex. 11) and finally including the $88,331.01 in costs in a section of the public adjuster's 1/21/2020 Estimate called "incurred invoices" that contained the description "per attached invoices and spreadsheet for roof repairs/mitigation" (O'Leary Dec., Ex. 4 at LSIC 001228). Plaintiff was aware **that** it was incurring tens of thousands of dollars in expenses to repair roof leaks after Irma and later presented the expenses to its insurers as Irma-related "roof repairs/mitigation" costs. However, despite this knowledge, IPC waited until 22 months after the storm to provide its insurers with first notice of an Irma claim. Because the undisputed facts are sufficient to "lead a reasonable and prudent man to believe that a claim for damages would arise," IPC's notice to its insurers was untimely as a matter of law and prejudice to defendants is therefore presumed.

Any assertion by Plaintiff that it was not aware that the many roof leaks and resulting property damage that occurred long before it gave notice of its loss to the insurers were the result of Irma is no excuse for its almost two-year delay in providing notice. Indeed, it is well established under Florida law that the contractual obligation to provide timely notice is triggered when there is damage to covered property. Period. The Policy requires that the insured provide immediate notice of "any loss or damage which may become a claim under this insurance policy." The issue of whether the insured understands the full extent of the damage, the cause of the damage, whether

17

it is covered or whether it exceeds any deductible is wholly irrelevant to the obligation to provide immediate notice to the insurer.  Florida courts addressing this precise issue have uniformly enforced the same or similar language as a basis to deny coverage.  *See*, *e.g.*, *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. C*o., 599 Fed. App'x 875, 880 (11th Cir. 2015) (finding notice untimely and concluding that "[w]hatever concerns the Board had about the extent of damage and its deductible are not relevant under Florida law" as "[p]rompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible."); *LMP Holdings, Inc. v. Scottsdale Ins. Co.*, 2021 WL 4900622, at *3 (S.D. Fla. Sept. 27, 2021) (finding notice untimely irrespective of whether insured believed that damages would not exceed policy's deductible or were otherwise not covered); *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co.*, 2012 WL 266438, at *4 (S.D. Fla. Jan. 30, 2012) (finding notice untimely as insured "was not entitled to wait until it determined on its own that the damages in question exceeded the deductible amount or until it ascertained the precise cause of the damage").

The same result should apply here.  Given the undisputed fact that there were numerous roof leaks causing property damage requiring numerous repairs in the wake of Irma over a period of almost 22 months, prior to Plaintiff providing any notice, any argument that Plaintiff was "unaware" that Irma caused the damage now being claimed, does not provide an excuse for Plaintiff's failure to provide timely notice.

**B.  Plaintiff Cannot Meet Its Burden of Demonstrating That Defendants Were Not Prejudiced by Late Notice.**

"Late notice creates a rebuttable presumption of prejudice to the insurer."  *LMP Holdings supra*, 2021 WL 4900622 at *2*, citing *Basdeo, supra*, 742 F. Supp. 2d at 1336.  "Thus, the insured has the burden of rebutting this presumption by presenting competent evidence that the insurer has

not been prejudiced by the late notice." *Id.*, citing *Bankers Ins. Co. v. Macias,* 475 So. 2d 1216, 1217-18 (Fla. 1985); *Clena, supra,* 2012 WL 1004851, at *4 (citation omitted). "The insured must prove that the insurer has not been deprived of the opportunity to investigate the facts." *Id.*, citing *Macias,* 475 So. 2d at 1218.

In *LMP Holdings,* the court determined as a matter of law that the insurer had been prejudiced by the policyholder's delay. The only evidence the insured proffered to rebut the presumption of prejudice was the fact that both parties' experts gave different opinions as to the causation of the damages sustained. Citing an Eleventh Circuit decision, *Yacht Club, supra,* 599 Fed. App'x at 881, where the court noted that the only evidence proffered was varying opinions from experts, the court found that these varying expert opinions were not enough to create a genuine issue of material fact. Indeed, the court concluded that the insured's "late notice frustrated the purpose of the notice requirement, which goes beyond mere causation and is meant to 'enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it.'" *Id*. at *10 (quoting *Yacht Club, supra,* at 881). The court also found that it was "undisputed that Plaintiff undertook several repairs prior to filing his claim with Defendant," and while defendant's engineer had an opportunity to inspect the property after the claim was filed, late notice "nevertheless prejudiced Defendant by not being able to inspect the Property prior to those repairs and by not participating in the repair of those damages." *Id.* at *10.

The "focus" of the prejudice analysis is "whether the delayed notice frustrated the underlying purpose of the notice provision." *Aseff v. Caitlin Specialty Ins. Co., Inc.*, 115 F. Supp. 3d 1364, 1370 (S.D. Fla. 2015). The insured may overcome the presumption of prejudice "by showing an investigation conducted immediately following the accident would not have disclosed

anything materially different from that disclosed by the delayed investigation[.]" *Id.* However, "testimony as to causation" is not enough to rebut this presumption since the "purpose of a provision for notice . . . is to enable the insurer to evaluate its rights and liabilities[.]" *Yacht Club,* 599 Fed. App'x at 881.

In this matter, while it is not the insurers' burden to prove prejudice, the existence of a disparity between the conclusions in the ProNet Report, based on an inspection and information available in September 2019, and the Held Report, based on an inspection and information available in March 2020, as to whether or not damage observed on Plaintiff's roofs was the result of Hurricane Irma, serves as a quintessential example of how defendants were undisputedly prejudiced by IPC's late notice. Plainly, the multiple repairs over 20 months before notice was provided, as documented in the Best Roofing and Roof Doctors invoices, reflect significant changes in the roof conditions from what they were immediately after the storm in September 2017. Further, "mitigation" repairs by Swenson Roofing, from later in 2019 through the present, have materially changed conditions even more, so much so that IPC's litigation expert, Eduard Badiu, encountered tarps over large sections of the roofs and did not examine those sections of the roofs when he conducted an inspection and issued his own, differing causation report for IPC in 2021. The passage of time – a multitude of repairs, years of weather events, foot traffic and the general deterioration of the aging roofs – has resulted in the spoliation of evidence that has undoubtedly prejudiced the insurers' rights as a matter of law.

In addition, the additional lapse of time in Colony and Evanston's receipt of notice of the claim added more significant evidence of prejudice. Experts were hired and inspections performed without Colony or Evanston's participation. On July 22, 2019 the Public Adjuster ("PA") and Independent Adjuster ("IA") inspected the property without Colony or Evanston's knowledge or

participation.  The report on that inspection indicated "we [the PA and IA] did not observe any visible evidence of wind damage or other openings as the result of a covered cause of the loss to the exterior building envelopes, doors or windows during our inspection."  On August 5, 2019 the PA prepares a repair estimate for $6,032,0820.38 On September 16 & 17, 2019 ProNet, IA and PA spent two days inspecting the property and found only 35 displaced tiles across all 24 buildings. Colony had no opportunity to participate in those inspections or the selection of experts to perform the inspection.  Once Colony was notified of the alleged loss, it recommended a third independent inspection which revealed no Hurricane Irma wind damage.

The immediate notice provision in the policy is there because of exactly what happened in this case.  Time changes all roofs.  The ability of the insurer and the insured to inspect the Property is in the policy because of the need to examine the property together in order to avoid disputes like this one.  The insured's failure give that notice clearly prejudiced the ability of the insurers to inspect the property in its condition immediately following the storm, particularly when the insured conducted repeated, costly and destructive changes to the roof.

**C. The Subject Policy Required More Than the "Prompt" Notice and Notice "As Soon as Practicable" Addressed in the Controlling Case Law.**

The cases cited above refer to notice of loss provisions that required "prompt" notice or notice "as soon as practicable".  Interpreting and applying that policy language, the courts found untimely as a matter of law notices of loss that were provided months and years after the loss event. Some of the decisions, such as *LMP Holdings, supra,* 2021 WL 4900622, at *3, and *Yacht Club, supra,* 599 Fed. App'x at 879, provide that an insured is not excused from providing timely notice when it believes loss or damage would be under the policy deductible because to do so would vitiate the insurer's contractual right to conduct an investigation and protect itself from fraud before evidence is lost or has changed.  The notice of loss provisions in the instant Policy make

explicit what *LMP Holdings* and *Yacht Club* held with regard to the notice obligation.

The Policy states: "The Insured shall report to the Insurer any loss or damage *which may become a claim under this insurance policy* as soon as may be practicable after it becomes known to the Insured."  O'Leary Dec., Ex. 2 (Policy at LSIC 000017) (emphasis added).  Under this provision, loss or damage that "may become a claim", not just loss or damage that the insured knows will become a claim, must be timely reported.  In addition, the "Duties of the Named Insured in the Event of Loss or Damage" condition of the Policy, states that the policyholder must, "as soon as possible", give "*immediate* notice of loss or damage" and permit the insurers to "inspect the property and records proving the loss or damage" before evidence is lost or altered and the insurers' investigation is prejudice.  *Id.* (Policy at LSIC 000025) (emphasis added).

Under Florida law, the failure of an insured to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy. *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333 (S.D. Fla. 2009) (citing *Waldrep*, *supra,* 400 So. 2d at 785) (noting that late notice is a defense to coverage)); *see*, *e.g.*, *Am. Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 790-91 (Fla. 2d DCA 1964).  By reason of Plaintiff's failure to comply with the "Notice of Loss" and "Duties of the Named Insured in the Event of Loss or Damage" provisions of the Policy, IPC's claim must fail as a matter of law and summary judgment should be entered in favor of the insurers.

**POINT III**

**SEVERAL POLICY EXCLUSIONS PRECLUDE PLAINTIFF'S CLAIMS FOR COVERAGE AND WARRANT THE DISMISSAL OF THE AMENDED COMPLAINT.**

**A.  The Policy Does Not Cover Wear and Tear or Gradual Deterioration.**

The Policy does not insure "wear and tear, or gradual deterioration, unless physical loss or

22

damage not excluded in this policy ensues, and then this policy shall only insure the ensuing loss or damage." O'Leary Dec., Ex. 2 (Policy at LSIC 000005 – LSIC 000006). Typically, the above-referenced exclusion for "Deterioration," et al., bars coverage for normal, expected occurrences that contribute to the natural deterioration of building materials and equipment, and it is not ambiguous. *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1322 (M.D. Fla. 2002). Other Florida courts have echoed this finding. *Miele v. Certain Underwriters at Lloyd's of London*, 559 Fed. App'x 858, 863 (11th Cir. 2014) (exclusion for losses caused, directly or indirectly, by "wear and tear" was not ambiguous); *Class Action of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 9759740, at *4 (S.D. Fla. May 30, 2013) (finding that Defendant demonstrated that "wear and tear" and "corrosion" exclusions are applicable.)

At the time of Hurricane Irma, three of the 12 roofs included in Plaintiff's claim were 17-18 years old and five of the roofs were 15-16 years old. O'Leary Dec., Ex. 8 (WRIGHT 001278). The roofs had a history of leaks and were deteriorating over time as confirmed in the ProNet Report, the Held Report, the Held Interior Report and Plaintiff's own documents. O'Leary Dec., Exs. 7, 16 & 17. The claimed damage to the aging roofs was the result of wear and tear and gradual deterioration, not Hurricane Irma. There was no separate ensuing loss or damage, and, therefore, the insurers correctly determined on this additional basis that there is no coverage under the Policy for the cost of replacing the IPC roofs.

## B. The Cost of Making Good Defective Design, Faulty Material or Faulty Workmanship is Excluded from Coverage Under the Policy.

The Policy does not insure the "cost of making good defective design, faulty material, or faulty workmanship, except, if physical loss or damage not excluded in this policy ensues, then this policy shall insure such ensuing loss or damage. O'Leary Dec., Ex. 2 (Policy at LSIC 000005 – LSIC 000006). Faulty workmanship or design exclusions have been found to be unambiguous

in Florida, regardless of the ensuing loss exception. For example, in *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161 (Fla. 2003), the Florida Supreme Court held that a defective-design exclusion for "[l]oss or damage caused by fault, defect, error or omission in design, plan or specification" was unambiguous, observing that an ambiguity exists "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." *Id.* at 165. *See also Church of the Palms-Presbyterian (U.S.A.), Inc. v. The Cincinnati Insurance Co.*, 404 F. Supp. 2d 1339 (M.D. Fla. 2005) (finding the policy's exclusion for "faulty repair, workmanship, and design" to be unambiguous and applied to bar coverage for the loss.).

Here, the engineers who examined the allegedly leaking roofs found numerous examples of defective workmanship and the use of improper materials, such as the use of mismatched tiles in repairs, but saw little (ProNet Report) and no (Held Report) evidence of Hurricane Irma-caused damage. There is no claim of ensuing loss or damage. The cost of making good the use of the faulty materials and workmanship is excluded from coverage under the Policy and, consequently, for this further reason, the insurers properly found there to be no coverage under the Policy for the cost of replacing the IPC roofs.

## <u>CONCLUSION</u>

Based on the foregoing reasons, Defendants respectfully request that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint as against Defendants with prejudice.

Date: November 19, 2021

**ZELLE LLP**
Sun Trust International Center
One Southeast Third Avenue, Suite 1600
Miami, Florida 33131-4332
Tel:    786-693-2350
Fax:    612-336-9100

By:    */s/ Christine M. Renella*
       **CHRISTINE M. RENELLA**
       Florida Bar No. 65485
       crenella@zelle.com

                     &

**FINAZZO COSSOLINI O'LEARY
MEOLA & HAGER, LLC**
Jeremiah L. O'Leary, Esq.*
jeremiah.oleary@finazzolaw.com
Robert M. Wolf, Esq.*
robert.wolf@finazzolaw.com
Piel A. Lora, Esq.*
piel.lora@finazzolaw.com
67 East Park Place, Suite 901
Morristown, New Jersey 07960
Tel:    973-343-4960
Fax:    973-343-4970
*Admitted Pro Hac Vice
*Attorneys for Defendant Liberty Surplus
Insurance Corporation*

**Goodman McGuffey, LLP**
Robert M. Darroch, Esq.
rdarroch@gm-llp.com
6751 Professional Parkway West, Suite 103
Sarasota, Florida 34240-8449
Tel:    941-953-4411
Fax:    941-953-4410
*Attorneys for Defendant Colony Insurance
Company*

**Clausen Miller P.C.**
Douglas M. Cohen, Esq.
dcohen@clausen.com
4830 West Kennedy Blvd., Suite 600
Tampa, Florida 33609
Tel:    312-606-7782
*Attorneys for Defendant Evanston Insurance
Company*

## REQUEST FOR HEARING PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1, Defendants respectfully request a hearing on the instant Motion.  Defendants submit that a hearing would be beneficial to the Court to address the multiple grounds for summary judgment set forth herein. Defendants estimate the time required to hear this Motion will not exceed one (1) hour [30 minutes for Defendants and 30 minutes for Plaintiff].

Date: November 19, 2021

**ZELLE LLP**
Sun Trust International Center
One Southeast Third Avenue, Suite 1600
Miami, Florida 33131-4332
Tel:   786-693-2350
Fax:   612-336-9100

By:   */s/ Christine M. Renella*
      **CHRISTINE M. RENELLA**
      Florida Bar No. 65485
      crenella@zelle.com

&

**FINAZZO COSSOLINI O'LEARY
MEOLA & HAGER, LLC**
Jeremiah L. O'Leary, Esq.*
jeremiah.oleary@finazzolaw.com
Robert M. Wolf, Esq.*
robert.wolf@finazzolaw.com
Piel A. Lora, Esq.*
piel.lora@finazzolaw.com
67 East Park Place, Suite 901
Morristown, New Jersey 07960
Tel:   973-343-4960
Fax:   973-343-4970
*Admitted Pro Hac Vice
*Attorneys for Defendant Liberty Surplus
Insurance Corporation*

26

**Goodman McGuffey, LLP**
Robert M. Darroch, Esq.
rdarroch@gm-llp.com
6751 Professional Parkway West, Suite 103
Sarasota, Florida 34240-8449
Tel:    941-953-4411
Fax:    941-953-4410
*Attorneys for Defendant Colony Insurance*
*Company*

**Clausen Miller P.C.**
Douglas M. Cohen, Esq.
dcohen@clausen.com
4830 West Kennedy Blvd., Suite 600
Tampa, Florida 33609
Tel:    312-606-7782
*Attorneys for Defendant Evanston Insurance*

*Company*